UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**DENISE ANDERSON** and
**RICHARD GILVEAR**,

    Plaintiffs,

v.                                              Case No. 8:23-cv-02366-WFJ-TGW

**GOODLEAP, LLC,** and
**GREEN HOUSE SOLAR AND AIR, INC.**,

    Defendants.
_____/

# ORDER

This matter comes before the Court on Defendant Goodleap, LLC's ("Goodleap") Motion to Dismiss and to Compel Arbitration (Dkt. 17) as well as Defendant Green House Solar and Air, Inc.'s ("Green House") Motion to Dismiss Plaintiff Denise Anderson's Claims and to Stay and Compel Arbitration of Plaintiff Richard Gilvear's Claims (Dkt. 15). Ms. Anderson and Mr. Gilvear ("Plaintiffs") filed Responses (Dkts. 18, 19). Upon careful consideration, the Court grants Green House's Motion, and the Court grants in part and denies in part Goodleap's Motion. The Court stays the case and compels arbitration of Plaintiffs' claims against Goodleap and Mr. Gilvear's claims against Green House. The Court dismisses Ms. Anderson's claims against Green House with leave to amend.

## BACKGROUND

Plaintiffs live together in a home owned by Ms. Anderson in Pasco County, Florida. Dkt. 1-1 ¶ ¶ 2–3. In April 2021, Defendants[1] solicited Mr. Gilvear at the home, offering to sell him a solar energy system. *Id.* ¶¶ 9, 34. Plaintiffs contend that Defendants assured Mr. Gilvear the system would produce enough energy to "reduce his electrical bills to zero," and did not inform him this was merely an estimate. *Id.* ¶¶ 10, 14, 15. Mr. Gilvear signed a contract to purchase the system from Green House ("Green House Contract"), and another contract to finance the purchase through Goodleap ("Goodleap Contract"). Dkt. 15-1; Dkt. 17-1.

Sadly, Plaintiffs were not satisfied with Mr. Gilvear's purchase. They take issue both with the quality of goods and services provided, as well as the formation of the contract itself. *See generally* Dkt. 1-1. Plaintiffs allege that the system did not produce enough energy to eliminate their electric bill and that it was poorly installed in a different manner than promised. *Id.* ¶ 24, 50–53. Further, Plaintiffs assert that Defendants sold them a roof penetration warranty with no intention of fulfilling it. *Id.* ¶ 25.

As for the contract formation, Plaintiffs complain that Defendants never provided disclosures or obtained Mr. Gilvear's consent for electronic signatures, did

---

[1] As explained below, the Complaint does not make clear which alleged misconduct is imputed to which Defendant.

not disclose the mandatory three-day cooling-off period for sales occurring at home, and did not disclose the actual cost of the loan. *Id.* ¶¶ 24, 34. Additionally, they assert that the written contract was materially different from Defendants' verbal assurances to Mr. Gilvear. *Id.* ¶¶ 32, 39–41.

Both contracts contain arbitration provisions. Dkt. 15-1 ¶ 9; Dkt. 17-1 ¶ 15. Although they contest the validity of the contracts as a whole, Plaintiffs do not make any specific allegations concerning these arbitration provisions. *See generally* Dkts. 1, 18, 19.

Plaintiffs filed the instant Complaint in the Sixth Judicial Circuit, Pasco County, Florida, citing seven causes of action: (1) deceptive and unfair trade practices, Dkt. 1 ¶¶ 19–26; (2) fraud in the execution of the contract, *id.* ¶¶ 27–32; (3) Plaintiff's alleged right of rescission, *id.* ¶¶ 33–36; (4) breach of contract, *id.* ¶¶ 37–43; (5) a request for avoidance of fraudulent transfers, *id.* ¶¶ 44–48; (6) negligence, *id.* ¶¶ 49–55; and (7) violation of the Truth in Lending Act, *id.* ¶¶ 56–65. Goodleap removed the case to federal court and filed its Motion to Dismiss Complaint for Failure to State a Claim and to Stay and Compel Arbitration (Dkt. 17). Goodleap asks the Court to compel arbitration for both Plaintiffs. Dkt. 17 at 9–11. Green House also filed a Motion (Dkt. 15), asking the Court to compel Mr. Gilvear to arbitrate and to dismiss Ms. Anderson's claims. Dkt. 15 ¶¶ 23, 39. Plaintiffs filed Replies (Dkts. 18, 19).

## LEGAL STANDARD

*A. Arbitration*

The Federal Arbitration Act ("FAA") "establishes a liberal federal policy favoring arbitration agreements." *Moses H. Cones Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). Under the FAA, arbitration agreements are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2 (1947).

A court may hear certain "gateway matters," including challenges to an arbitration clause's validity. *Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444, 452 (2003); *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444–45 (2006). However, challenges to the validity of the contract as a whole should be heard by the arbitrator. *Buckeye*, 546 U.S. at 445. "[S]tate law generally governs whether an enforceable contract or agreement to arbitrate exists," but even when applying state law, "the federal policy favoring arbitration" must be "taken into consideration." *Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1368 (11th Cir. 2005).

The Court considers the following factors when deciding whether to compel arbitration: "1) whether a valid written agreement to arbitrate exists; 2) whether an arbitrable issue exists; and 3) whether the right to arbitrate has been waived." *Williams v. Eddie Acardi Motor Co.*, No. 3:07-cv-782-J-32JRK, 2008 WL 686222, at *4 (M.D. Fla. Mar. 10, 2008) (citations omitted). If a court compels

4

arbitration, it should stay, rather than dismiss, the arbitrable claims. *Klay v. All Defs.*, 389 F.3d 1191, 1203–04 (11th Cir. 2004).

   B. *Motion to Dismiss*

Federal Rules of Civil Procedure 8(a) and 10(b) establish the minimum pleading requirements for a complaint. Under the notice pleading standards set forth in Rule 8, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To comply with Rule 10, a plaintiff must also bring her claims in separate, numbered paragraphs, with each claim "limited as far as practicable to a single set of circumstances." Fed. R. Civ. P. 10(b). A complaint that violates either of these rules is often disparagingly called a "shotgun pleading," and district courts retain the authority to dismiss such complaints. *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1320 (11th Cir. 2015). A dismissal under Rules 8(a)(2) and 10(b) is appropriate where "it is virtually impossible to know which allegations of fact are intended to support which claim(s) for relief." *Id.* at 1325.

## ANALYSIS

The Court will discuss each Motion in turn.

*A. Green House's Motion to Compel Arbitration*

The Green House contract, signed by Mr. Gilvear and a Green House sales representative, states:

> At the exclusive election of the Contractor, all disputes arising out of or related to this Sales Contract, or to the interpretation, performance, breach, or termination thereof may be resolved by binding arbitration . . . The parties expressly agree that nothing in this Sales Contract will prevent the parties from applying to a court that would otherwise have jurisdiction for injunctive or other equitable relief . . . the parties agree that any relief ordered by the arbitrator may be immediately and specifically enforced by a court otherwise having jurisdiction over the parties . . .

Dkt. 15-1 ¶ 9.

1. <u>A valid agreement to arbitrate exists.</u>

Plaintiffs contest the validity of the arbitration agreement in two ways. First, they argue that the Green House Contract is invalid under Florida's Uniform Electronic Transaction Act, Fla. Stat. § 668.50, and the Electronic Signatures in Global and National Commerce Act, 15 U.S.C. § 7001. Dkt. 18 at 11–13. Plaintiffs contend that the lack of "a valid E-Sign consent . . . transforms any purported agreement into an invalid one." Dkt. 18 at 12. The arbitration clause is one part of a uniform seven-page document. Dkt. 15-1. Mr. Gilvear initialed the bottom of each page and signed at the end of the document. *Id.* Thus, the electronic consent argument goes to the contract as a whole.

"[U]nless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance." *Buckeye*, 546 U.S. at 446. Where, as here, plaintiffs "challenge the [contract], but not specifically its arbitration provisions, those provisions are enforceable apart from

6

the rest of the contract." *Id.* The arbitrator must determine if Mr. Gilvear's alleged lack of consent to conduct electronic transactions invalidates the contract as a whole.

Plaintiffs also argue that there is no valid arbitration agreement because Defendants' oral assurances did not match the written contract. Dkt. 18 at 13–15. For support, they cite *Cancanon v. Smith Barney, Harris, Upham & Co.*, 805 F.2d 998 (11th Cir. 1986). The *Cancanon* defendants told the plaintiffs, who spoke only Spanish, that a contract written in English was for a money market account. *Cancanon*, 805 F.2d at 999. Actually, the contract was for a securities account. *Id.*; *see also Solymar Invs., Ltd. v. Banco Santander S.A.*, 672 F.3d 981, 995 (11th Cir. 2012). The court found that "whether the plaintiffs gave effective assent" was a triable issue. *Id.* at 1001.

The Eleven Circuit distinguished *Cancanon* in *Solymar Invs., Ltd. v. Banco Santander*. The *Solymar* court explained that *Cancanon* addressed fraud in the factum, which is different from fraud in the inducement. *Solymar*, 672 F.3d at 995. Under the later claim, "a party understands the nature of the contract they are executing but contends that there has been some material misrepresentation as to the obligations rising thereunder." *Solymar*, 672 F.3d at 995. Mr. Gilvear knew he was signing a contract for a solar energy system but believed the system would eliminate an entire utility bill. Dkt. 18 at 14–15. This is a "false impression of the risks, duties, or obligations" of the contract, not a misrepresentation of the contract's "character

7

or essential terms." *Solymar*, 672 F.3d at 995. Thus, Plaintiffs' claims are more like those in *Solymar* than *Cancanon*, and Plaintiffs' argument is "properly reserved for an arbitrator." *Id.*

    2. <u>Arbitrable issues exist.</u>

The arbitration provision encompasses "all disputes arising out of or related to this Sales Contract, or to the interpretation, performance, breach, or termination thereof" but does not cover requests for "injunctive or other equitable relief." Dkt. 15-1 ¶ 9. Further, it leaves to the Court enforcement of any relief ordered by the arbitrator. *Id.*

Plaintiffs bring numerous claims "arising out of or related to" the Green House Contract or to its "interpretation, performance, breach, or termination." *See* Dkt. 15-1, ¶ 9. To start, Counts One, Four, and Six are all plainly arbitrable. Count One alleges that Defendants rendered deficient performance and ultimately breached the contracts. Dkt. 1-1 ¶¶ 23–25. Count Four, for breach of contract, alleges that Defendants did not comply with their contractual obligations. Dkt. 1-1 ¶¶ 39–42. Count Six asserts that Defendants performed negligently. Dkt. 1-1 ¶¶ 50–53. Each of these allegations concerns performance or breach.

Count Two, fraud in the execution, charges that Defendants denied Mr. Gilvear adequate time to review the contract, and that the written contract was inconsistent with Defendants' verbal assurances to Mr. Gilvear. *Id.* ¶¶ 28–32. As

explained in the preceding section, this claim is arbitrable because it goes to the formation of the contract as a whole. *See Buckeye*, 546 U.S. at 446; *Woerner v. CitiFinancial Mortgage Co., Inc.*, No.: CV 04-P-3350-S, 2005 WL 8158477, at *3 (N.D. Ala. Mar. 4, 2005) (discussing a fraud-in-the-execution claim). Count Three, a request to exercise an alleged three-year right of rescission under 15 U.S.C. § 1635(f), relates to potential termination. Dkt. 1-1 ¶ 36. Count Three also relates to interpretation, because § 1635 only applies to certain types of loans. *See* § 1635(a). Count VII is not governed by the Green House Contract, because Plaintiffs only brought that count against Goodleap. Dkt. 1-1 ¶ 57.

Only Count V remains. Count V asks the Court to avoid "any transfer between Green House and any party" so that, in the event Plaintiffs prevail, they may "perfect a judicial lien" against Green House's assets. *Id.* ¶ 48. While the arbitration clause does leave enforcement of relief to a court, Dkt. 15-1 ¶ 9, the interpretation of this count is an arbitrable issue.

Therefore, the Court finds the Complaint contains numerous arbitrable issues. The final consideration is whether Green House has waived arbitration.

3. <u>Green House has not waived its right to arbitrate.</u>

To determine if a party has waived its right to arbitrate, courts ask whether "parties have invoked the litigation machinery before reversing course and claiming

that arbitration was the proper avenue all along." *Payne v. Savannah Coll. of Art and Design*, 81 F.4th 1187, 1201 (11th Cir. 2023) (citing *Morgan v. Sundance, Inc.*, 596 U.S. 411, 419 (2022)). The party asserting waiver bears the burden of proof. *Krinsk v. SunTrust Banks, Inc.*, 654 F.3d 1194, 1200 n.17 (11th Cir. 2011).

In the instant case, Plaintiffs have not argued that Green House waived its right to arbitrate. Because Plaintiffs bear the burden, this is reason enough to find against waiver. In any case, Green House has not acted inconsistently with its arbitration right—the first pleading Green House filed was its Motion to Dismiss and Compel Arbitration. *See Mason v. Midland Funding, LLC*, 1:16-CV-2867-WMR-CCB, 2021 WL 3017993, at *19 (N.D. Ga. Jan. 18, 2021) ("[A] party does not waive its right to arbitrate a dispute by filing a motion to dismiss.") (quoting *Dockeray v. Carnival Corp.*, 724 F. Supp. 2d 1216, 1222 (S.D. Fla. 2010)).

Consequently, the Court compels arbitration as to Mr. Gilvear's claims against Green House. Because Plaintiffs' arguments about validity go to the contract as a whole, and not the agreement to arbitrate specifically, the Court declines to order discovery or hold an evidentiary hearing on this matter.

*B. Green House's Motion to Dismiss*

Green House did not move to compel arbitration with Ms. Anderson. Instead, Greenhouse moved to dismiss Ms. Anderson's allegations for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Dkt. 15 ¶ 1. The Court need not

consider Green House's 12(b)(6) argument because there is a more fundamental justification for dismissal: the Complaint is a shotgun pleading.

In *Weiland v. Palm Beach County*, the Eleventh Circuit identified four types of shotgun pleadings: (1) complaints in which each count "adopts the allegations of all preceding counts"; (2) complaints that are "replete with conclusory, vague, and immaterial facts"; (3) complaints that fail to separate each cause of action into separate counts; and (4) complaints that assert multiple claims against multiple defendants without specifying which defendant is responsible for which acts. 792 F.3d 1313, 1321–23 (11th Cir. 2015). No matter the type, all shotgun pleadings exhibit the "unifying characteristic" of failing to give defendants "adequate notice of the claims against them and the grounds upon which each claim rests." *Id.* at 1323.

The instant Complaint brings seven counts, and only one of them (Count VII) specifies which defendant it charges. As to the other six counts, Defendants and the Court are left to guess at which particular claims apply to which defendant. *See Jackson v. Bank of Am.*, 898 F.3d 1348, 1358 (11th Cir. 2018). Thus, the Complaint fails to give Defendants adequate notice of the claims against them and the grounds upon which each claim rests. Ms. Anderson's claims against Green House are due to be dismissed with leave to amend.

*C. Goodleap's Motion to Compel Arbitration*

Goodleap moves to compel arbitration on all claims as to both Plaintiffs. The Goodleap Contract, signed by Mr. Gilvear and a Loanpal[2] Co-Founder, states that:

> All claims and disputes arising out of or relating to this Agreement (hereafter, "Dispute(s)") shall be resolved by binding arbitration on an individual basis. The arbitrator shall also decide any issues relating to the making, validity, enforcement, or scope of this arbitration agreement, arbitrability, defenses to arbitration including unconscionability, or the validity of the jury trial, class action, or representation waivers (collectively, "arbitrability" issues) . . .

Dkt. 17-1 ¶ 15.

1. <u>A valid agreement to arbitrate exists.</u>

As with the Green House Contract, Plaintiffs assert that the Goodleap Contract is invalid because Mr. Gilvear did not consent to electronic transactions, Dkt. 19 at 8–10, and because "the character and nature of the deal changed at execution." *Id.* at 11. To support their second contention, Plaintiffs again allege that Defendants verbally assured Mr. Gilvear the solar energy system would eliminate a utility bill, and the written contract indicated that this was not a guarantee. *Id.*

As explained above, both these arguments go to the validity of the contract as a whole, rather than the arbitration provision specifically. Therefore, they are for the arbitrator. *See Buckeye*, 546 U.S. at 446; *Solymar*, 672 F.3d at 995. Plaintiffs make

---

[2] It appears that Loanpal and Goodleap are the same entity. Plaintiffs did not challenge the use of the Loanpal name on the Goodleap Contract. *See generally* Dkts. 1-1, 19.

no argument specific to the arbitration agreement's validity. The Court finds a valid agreement to arbitrate exists.

2. <u>Arbitrable issues exist.</u>

Unlike the Green House Contract, the Goodleap Contract expressly reserves any issues relating to the scope of the arbitration agreement for arbitration. Dkt. 17-1 ¶ 15. Under the FAA and U.S. Supreme Court precedent, "the question of who decides arbitrability is itself a question of contract." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 527 (2019) (internal citations omitted). If the parties agree by contract that an arbitrator, rather than a court, will decide threshold questions such as scope, "the courts must respect the parties' decision as embodied in the contract." *Id.* at 528.

Thus, as concerns the Goodleap Contract, the arbitrator must decide the threshold question of whether arbitrable issues exist.

3. <u>Goodleap did not waive arbitrability.</u>

As with Green House, Goodleap evinced no intent to litigate prior to filing its Motion to Compel Arbitration. It has not waived its right to arbitrate. Consequently, the Court compels arbitration on all of Plaintiffs' claims against Goodleap.

4. <u>The Court compels Ms. Anderson to arbitrate her claims against Goodleap.</u>

Goodleap asks the Court to compel Ms. Anderson to arbitrate her claims. Dkt. 17 at 9. The question of whether a nonparty is bound by a contract's arbitration

13

provision is a question of state law. *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 632 (2009). "[T]o the extent state law applies," the Goodleap Contract is governed by "the substantive laws of the state where the Residence is located." Dkt. 17-1 ¶ 14. The residence at issue is located in Pasco County, Florida. Dkt. 1-1 ¶ 2. Under Florida law, "[t]hird persons who are not parties to an arbitration agreement generally are not bound by the agreement." *Mendez v. Hampton Court Nursing Cntr, LLC*, 203 So. 3d 146, 148 (Fla. 2016). Still, "when a plaintiff sues under a contract to which the plaintiff is not a party" Florida courts "will ordinarily enforce an arbitration clause contained in that contract, absent some other defense." *Id.* at 149.

Ms. Anderson is suing under the Goodleap Contract. She appears to allege that: (1) Goodleap misrepresented the expected cost savings when it sold the solar energy system to Mr. Gilvear; (2) because Goodleap failed to gain Mr. Gilvear's consent for the use of electronic documents, Mr. Gilvear should be able to rescind the Goodleap Contract; (3) Goodleap breached its contract with Mr. Gilvear; (4) the contracted-for work was done negligently; and (5) the amount of Goodleap's loan to Mr. Gilvear, which is the subject of the Goodleap Contract, was improperly inflated. Dkt. 19 at 2–3; Dkt. 1-1 ¶¶ 57–65. Each of these claims arises under the contract. Ms. Anderson "cannot claim [she is] entitled to the benefit of the [contract's] coverage provision while simultaneously attempting to avoid the burden of the [contract's] arbitration provision." *Allied Profs. Ins. Co. v. Fitzpatrick*, 169 So. 3d

14

138, 142 (Fla. 4th DCA 2015). The Court compels Ms. Anderson to arbitrate her claims against Goodleap.

*D. Motions to Dismiss and for Fees / Costs*

Both Defendants moved the Court to dismiss the case and award fees and costs. As noted above, the Court dismisses Ms. Anderson's claims against Green House, with leave to amend. The Court stays all other claims pending arbitration.

Because this Order does not affect a "material alteration of the legal relationship of the parties," Defendants are not prevailing parties as that term is typically used. *Frazier v. Johnson*, 8:08–CV–677–T–17TGW, 2009 WL 331372, at *2 (M.D. Fla. Feb. 10, 2009); *Ffrench v. Ffrench*, 418 F. Supp. 3d 1186, 1190 (S.D. Fla. 2019). Furthermore, the issue of fees and costs is arbitrable under both contracts. Dkt. 17-1 ¶ 15 ("[T]he arbiter may award you reasonable attorney's fees and costs if this is expressly authorized by applicable law."); Dkt. 15-1 ¶ 9 (stating that arbitrator will order relief); *see also* Fed. R. Civ. P. 54 (encompassing costs and fees within a judgement). Defendants' requests for fees and costs are denied without prejudice.

## CONCLUSION

The Court compels arbitration of Mr. Gilvear's claims against both Defendants, compels arbitration of Ms. Anderson's claims against Goodleap, dismisses Ms. Anderson's claims against Green House with leave to amend, and

stays the case with the exception of any amended complaint Ms. Anderson may file against Green House.

Accordingly, it is hereby **ORDERED** and **ADJUDGED**:

(1) Green House's Motion to Compel Arbitration as to Mr. Gilvear (Dkt. 15) is **GRANTED**.

(2) Green House's Motion to Dismiss Ms. Anderson's Claims (Dkt. 15) is **GRANTED WITHOUT PREJUDICE**. Should Ms. Anderson choose to amend, she must do so within twenty-one (21) days.

(3) Goodleap's Motion to Compel Arbitration (Dkt. 17) is **GRANTED** as to both Plaintiffs.

(4) With the exception of any amended complaint Ms. Anderson may file against Green House, the instant case is stayed pending arbitration.

**DONE AND ORDERED** at Tampa, Florida, on December 12, 2023.

/s/ William F. Jung
**WILLIAM F. JUNG**
**UNITED STATES DISTRICT JUDGE**

**COPIES FURNISHED TO**:
Counsel of Record